UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Jaquinda Coleman,

                              Plaintiff,

                                            **Hon. Hugh B. Scott**

                                            09CV157S

                v.

                                            **Decision & Order**
                                            **and**
                                            **Report &**
                                            **Recommendation**

The City of Niagara Falls, et. al.,

                              Defendants.
_____

Before the Court are the following motions: defendants' motion to dismiss (Docket No. 19)[1] and plaintiff's motion to amend the notice of claim (Docket No. 40)[2].

**Background**

The plaintiff, Jaquinda Coleman ("Coleman") commenced this action pursuant to 42 U.S.C. §1983 alleging that her rights were violated in connection with her arrest on February 24,

---

[1] The motion to dismiss was filed on behalf of the City of Niagara Falls (Docket No. 19). Defendant Redmond filed a declaration joining in the motion (Docket No. 25).

[2] The motion to dismiss the original complaint is moot to the extent that the plaintiff seeks to file an amended complaint. Some of the claims which the defendants challenged in the motion to dismiss were not included in the Proposed Amended Complaint. The arguments that were asserted as the basis of the defendants' motion to dismiss are re-asserted in support of the contention that the claims in the plaintiff's Proposed Amended Complaint are futile. Thus the motion to dismiss and the motion to amend the complaint are intertwined.

1

2008. Named as defendants are: The City of Niagara Falls ("Niagara Falls"), Kenneth E. Redmond ("Redmond") and ten "John Does" whose identities are unknown. (Docket No. 1). It is undisputed that on February 24, 2008, Coleman was arrested by Niagara Falls police officers. Defendant Redmond, and other Niagara Falls police officers, responded to a domestic dispute involving Coleman's pregnant sister and her sister's boyfriend. (Docket No. 40, page 38, at ¶20). According to the defendants, Coleman attempted to impede their investigation and failed to obey various orders to disperse. (Docket No. 21 at page 2). Coleman was eventually arrested and charged with disorderly conduct, obstruction of justice, and resisting arrest. (Docket No. 20 at ¶ 3). Among the charges asserted against Coleman, the plaintiff was charged with obstructing governmental administration and disorderly conduct in that she impeded the investigation of an assault involving one of her neighbors by "demanding that an arrest be made, refusing numerous orders to leave the scene, shouting racial slurs directed at officers, and making threats of physical violence towards Officer Redmond and, in fact, did attack." (Docket No. 20-2 at page 5). Coleman was alleged to have resisted arrest in the following manner: "Jaquinda Coleman did intentionally attempt to prevent Officer Redmond from affecting a lawful arrest of herself by pulling away from [Redmond] and clenching her fists. [Coleman] was pepper sprayed in the facial area and at the time she charged at [Redmond], attempting to tackle him by the waist. [Redmond] did strike [Coleman] with a flashlight at which time she was taken into custody." (Docket No. 20-2 at page 4). The plaintiff was charged with a second count of disorderly conduct after her arrest, when she shouted at the officers: "I'm no fucking dog, I don't have to listen to you. I only listen to God, you white supremacist. Reverend Al Sharpton will have your job for being a racist, white supremacist. I am here to bring the white folk down. There is a white versus black thing, you cops are white supremacists bringing us black folk down. Go

ahead, please try to arrest me, see what happens." (Docket No. 20-2 at page 7). Coleman pled guilty to two counts of disorderly conduct admitting that she refused to comply with lawful orders of the police and that she used abusive language. (Docket No. 20-2 at page 9). During the plea colloquy, however, Coleman was expressly asked only whether she "refused to comply with a lawful order of the police to disperse." (Docket No. 20-2 at page 9). The plaintiff was not directly asked if she admitted to each of the other factual representations in the charging document. Coleman disputes (Docket No. 36 at ¶ 4) the "version of the incident" as set forth in the defendant's papers (Docket No. 21 at pages 2-4).

The plaintiff's original Complaint asserts the following claims:(1) that the defendant's actions "were without warrant, authority of law, or any reasonable cause" in violation of §1983 (Docket No. 1 at ¶¶ 39-43); (2) that the defendant's used excessive force (Docket No. 1 at ¶¶ 44-47); (3) false arrest and imprisonment pursuant to §1983 (Docket No. 1 at ¶¶ 48-50); (4) common law assault (Docket No. 1 at ¶¶ 51-53); (5) common law battery (Docket No. 1 at ¶¶ 54-56); (6) common law false arrest and imprisonment (Docket No. 1 at ¶¶ 57-59); (7) common law intentional infliction of emotional distress (Docket No. 1 at ¶¶ 60-63); (8) negligent infliction of emotional distress (Docket No. 1 at ¶¶ 64-67); and (9) common law negligence (Docket No. 1 at ¶¶ 68-71).[3]

---

[3] The plaintiff filed an Amended Complaint without seeking consent of the defendants or leave of the Court. (Docket No. 35). Counsel for the plaintiff acknowledges that the proposed Amended Complaint was improvidently filed, and subsequently filed a motion to amend the complaint. (Docket No. 44 at page 1). Although entitled as a motion to amend the "notice of claim," the motion to amend clearly seeks to amend the complaint in this case. (Docket No. 40 at ¶¶3, 9). In any event, the Amended Complaint filed on April 2, 2010 (Docket No. 35) is a nullity.

## Discussion

The plaintiff seeks to amend the complaint (Docket No. 40). The proposed Amended Complaint reasserts the general allegations set forth in the original Complaint (occasionally adding more detail), but eliminates Count 1 (that the defendant's actions "were without warrant, authority of law, or any reasonable cause" in violation of §1983), Count 3 (false arrest and imprisonment pursuant to §1983 ) and Count 6 (common law false arrest and imprisonment) as originally pled. Thus, the Proposed Amended Complaint would assert the following claims: (1) excessive force in violation of the Fourth and Fourteenth Amendments (Proposed Amended Complaint at ¶¶ 44-47); (2) assault (Proposed Amended Complaint at ¶¶ 48-52); (3) battery (Proposed Amended Complaint at ¶¶ 53-57); (4) intentional infliction of emotional distress (Proposed Amended Complaint at ¶¶ 58-62); (5) negligent infliction of emotional distress (Proposed Amended Complaint at ¶¶ 63-65); (6) negligent hiring (Proposed Amended Complaint at ¶¶ 67-70).

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a party's pleading "shall be freely given when justice so requires." Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 283 (2d Cir.2000).

The defendants oppose the motion to amend the complaint on the grounds that it would be futile. (Docket No. 43). The defendants argue that Coleman's §1983 excessive force claim must fail due to Coleman's guilty plea to the disorderly conduct charges. In support of this argument, the defendants cite to Nogbou v. Mayrose, 2009 WL 3334805 (S.D.N.Y., October 15,

2009), wherein the Court dismissed the plaintiff's excessive force claims pursuant to Rule 12 by finding that the officer's actions were objectively reasonable under the circumstances present in that case. In Nogbou, however, the Court determined that the plaintiff's allegations established that the force used the officers was *de minimus*. Nogbou, 2009 WL 3334805 at *6. The Court cannot make a similar finding in the instant case based upon a review of the allegations in the Proposed Amended Complaint. In the Proposed Amended Complaint, Coleman states that as the police were investigating the domestic dispute involving Coleman's sister, Coleman asked Redmond why her sister's boyfriend was not being arrested and stated to Redmond that he [the boyfriend] would have been arrested if the victim was a white woman. (Proposed Amended Complaint at ¶ 21). According to the plaintiff, Redmond told her that if she thought like that she would not "get far in the system." (Proposed Amended Complaint at ¶ 22). Coleman asserts that she responded to Redmond that she was "not interested in getting anywhere in a White supremacist system." (Proposed Amended Complaint at ¶ 23). Coleman claims that Redmond told the plaintiff to go away or he would pepper spray her (Proposed Amended Complaint at ¶ 24), and that after "a further verbal exchange," Redmond walked away to another area of the parking lot, then without warning "ran up to [Coleman] and discharged pepper spray into her face." (Proposed Amended Complaint at ¶¶25-27). Coleman contends that she took her glasses off after she was pepper sprayed, and at that time, Redmond struck her on the forehead with a flashlight. (Proposed Amended Complaint at ¶29). Specifically as to Niagara Falls, Coleman alleges that the City "had a policy an custom in place that tolerated the use of flashlights as weapons to subdue suspects and arrestees without reference to a reasonable use of force continuum and without consideration of recourse to less deadly uses of force, a policy and custom in place that tolerated the use of pepper spray on suspects and arrestees who are not

5

resisting arrest or otherwise engaging in criminal activity and which otherwise tolerated and encouraged use of excessive force in making arrests and in retaliation of perceived disrespect of police officers. (Proposed Amended Complaint at ¶18). These allegations are not factually negated by the plaintiff's guilty plea on the disorderly conduct charge in which she expressly admitted only to the failure to disperse.[4] See Getlin v. Zoll, 2010 WL 1608845 (E.D.N.Y. 2010)(Plaintiff's claim of excessive force is not precluded by his prior conviction for reckless endangerment. Neither the conviction itself nor the plea allocution addresses Plaintiff's action in accelerating his car so as to endanger a police officer vis a vis when Plaintiff was shot.) In light of the dispute as to the factual circumstances leading up to the use of force by Redmond, the Court cannot conclude that the officer's conduct was objectively reasonable and that the force used was *de minimus*, as was the case in Nogbou. To the extent that dismissal was based upon this argument, the motion to dismiss should be denied.

Further, the Supreme Court has clarified the pleading standard required to withstand a motion to dismiss. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a

---

[4] Generally, "[i]t is well-established that a defendant who pleads guilty waives any challenge to the constitutionality of his arrest, interrogation, search and prosecution." Oliver v. Tepperman, 2010 WL 889276 (E.D.N.Y., 2010) quoting Houston v. New York State Troopers, 1997 WL 639256, *2 (S.D.N.Y. Oct.15, 1997); see also United States v. Arango, 966 F.2d 64 (2d Cir.1992); Berman v. Turecki, 885 F.Supp. 528, 533 (S.D.N.Y.1995) ("A guilty plea is not just an admission of unlawful conduct, it is a waiver of all the constitutional rights embodied in the right to a jury trial.") (citing McCarthy v. United States, 394 U.S. 459, 466 (1969) (A guilty plea "disposes of any issue pertaining to the constitutionality of [p]laintiffs arrest, interrogation, search and prosecution.")). Notwithstanding, a guilty plea does not necessarily preclude a claim that the police used excessive force in effectuating an arrest. Griffin v. Crippen, 193 F.3d 89 (2d. Cir. 1999); Odom v. Dixion, 2008 WL 466255 (W.D.N.Y., 2008).

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1950 (2009) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565-66 (2007). Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions. Iqbal, 129 S.Ct. at 1950-51. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir.2010) (quoting Iqbal, 129 S.Ct. at 1950). The Court must then consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. Iqbal, 129 S.Ct. at 1951; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009). Here, the plaintiff sets forth allegations with sufficient specificity as to the excessive force claim, which if believed to be true, plausibly suggest entitlement to relief.

Next, the defendants contend that the plaintiff cannot assert the various state law claims because she failed to appear for the §50-h hearing as required under the New York General Municipal Law. (Docket No. 43 at page 2). It appears that the §50-h hearing was scheduled to take place on June 17, 2008. On June 11, 2008, David Rusin, Esq., former counsel for Coleman, wrote to the Niagara Falls Corporation Counsel and stated that the June 17, 2008 date was inconvenient for Coleman and that Coleman did not want to appear for such a hearing until after

the conclusion of the underlying criminal case against her. (Docket No. 36-2)[5]. By letter dated June 13, 2008, Assistant Corporation Counsel Douglas Janese Jr. responded that he would reschedule the hearing for another date (and provided several proposed dates in June and July of 2008), but that unless one of the proposed dates was acceptable he intended to proceed with the §50-h hearing on June 17, 2008 as scheduled. (Docket No. 36-3). Coleman did not agree to any of the proposed dates and did not appear for the §50-h hearing on June 17, 2008. By letter dated November 26, 2008, Rusin advised Janese that the criminal matter had been resolved and that Coleman was now available for a §50-h hearing. (Docket No. 36-4). Niagara Falls did not conduct such a hearing.

Generally, a plaintiff who has failed to comply with a demand for a hearing served pursuant to General Municipal Law § 50-h(2) is precluded from commencing an action against a municipality. See General Municipal Law § 50-h[5].[6] However, the statute suggests that the municipality *shall* grant a reasonable requests for adjournment of the administrative hearing and

---

[5] The defendants contend that the plaintiff did not suggest that her request to adjourn the June 17, 2008 §50-h hearing was related to her criminal proceedings until five months after she failed to appear for the hearing. (Docket No. 37 at page 7, n21). This is inaccurate. The records reflects that plaintiff's counsel's June 11, 2008 letter clearly stated that the plaintiff was "involved in a matter now pending in the criminal courts" and counsel desired "to abide that event." (Docket No. 36-2). The municipality was put on notice of the basis for Coleman's requested adjournment prior to the original hearing date.

[6] See Matter of Pelekanos v. City of New York, 694 N.Y.S.2d 694 (2d. Dept. 1999); La Vigna v. County of Westchester, 160 A.D.2d 564 (1st Dept.1990)("The law is well established that, until a potential plaintiff has complied with General Municipal Law § 50-h(1), [the individual] is precluded from commencing an action."); Cespedes v. City of New York, 301 A.D.2d 404, 405 (1st Dept.2003) (failure to appear for a General Municipal Law § 50-h hearing before commencement of an action is a basis for dismissal); Zapata v. County of Suffolk, 806 N.Y.S.2d 597 (2d Dept.2005)(A party who has failed to comply with General Municipal Law § 50-h is precluded from commencing an action against a municipality; the plaintiff's incarceration did not constitute an exceptional circumstance excusing his failure to appear for the repeatedly adjourned hearing and that the municipal defendant was obligated to arrange for his attendance at the hearing.).

anticipates that such request may be for periods beyond 90 days. Section 50-h(5) provides as follows:

> Where a demand for examination has been served as provided in subdivision two of this section no action shall be commenced against the city, county, town, village, fire district or school district against which the claim is made unless the claimant has duly complied with such demand for examination, which compliance shall be in addition to the requirements of section fifty-e of this chapter. If such examination is not conducted within ninety days of service of the demand, the claimant may commence the action. The action, however, may not be commenced until compliance with the demand for examination if the claimant fails to appear at the hearing or requests an adjournment or postponement beyond the ninety day period. **If the claimant requests an adjournment or postponement beyond the ninety day period, the city, county, town, village, fire district or school district <u>shall</u> reschedule the hearing for the earliest possible date available.**

New York State General Municipal Law, §50-h(5)(emphasis added).

The purpose of the statute is to afford the municipality an opportunity to depose the claimant before an action is commenced to facilitate the possible resolution of any dispute prior to litigation. Such a hearing can be postponed due to Fifth Amendment considerations. See <u>Kemp v. County of Suffolk</u>, 878 N.Y.S.2d 135 (2d Dept. 2009). However, under such circumstances, the plaintiff is required to take steps to reschedule the §50-h hearing, not the municipality. In <u>Kemp</u>, the Court held that "[u]nder the circumstances of this case, where the plaintiff invoked his Fifth Amendment privilege against self-incrimination at the hearing pursuant to General Municipal Law § 50-h, on January 7, 2005, the plaintiff, not the County defendants, was obligated to reschedule a continuation of the 50-h hearing after the criminal proceeding terminated two years later." <u>Kemp</u>, 878 N.Y.S.2d. at 136-137. In the instant case, it is undisputed that the plaintiff in fact attempted to reschedule the §50-h hearing after the conclusion of the criminal proceedings (only 5 months after the original hearing date). The

statute does not limit the length of time that a plaintiff can request for an adjournment. Although the language of the statute appears to require the municipality to reschedule the hearing upon request, here the municipality refused to do so. Under the circumstances present in this case, the plaintiff did not willfully refuse to comply with the requirement to appear at a §50-h hearing prior to commencing this action. Thus, dismissal of the complaint is unwarranted. See Komyathy v. East Hampton Union Free School Dist., 437 N.Y.S.2d 14 (2d Dept. 1981)(Plaintiffs' conduct of failing to timely comply with ordered examinations was not willful default .. that warranted dismissal of complaint where attorney for plaintiffs justifiably relied upon agreement ... to adjourn examinations, ... and defense attorney subsequently refused to conduct examinations.)[7] Thus, defendant's argument that the plaintiff's claims are futile due to the fact that she did not appear for the §50-h hearing on June 17, 2008 lack merit. To the extent the defendants sought dismissal of the plaintiff's claims on this grounds, the motion should be DENIED.

Niagara Falls also argues that the plaintiff's assertion of a claim against the municipality based upon the negligent hiring and training of Redmond is futile because the notice of claim filed by Coleman did not properly raise such a claim. (Docket No. 43 at page 3). The notice of claim filed by the plaintiff asserted the following description of the nature of her claim:

---

[7] The fact that Komyathy may be distinguished from the instant case in that in Komyathy the parties had initially agreed upon an adjournment does not negate the central holding of the case, that the plaintiff's conduct in failing to comply with the hearing requirement was not willful where the plaintiff attempted to reschedule the hearing, but the municipality refused. The defendants have presented no authority refuting the express language of the statute, in support of their contention that the municipality can refuse to adjourn the §50-h hearing upon a reasonable request, then refuse to reschedule the hearing (again upon a reasonable request by the plaintiff), so as to preclude the plaintiff from asserting claims based upon a failure to comply with the hearing requirement.

10

> Assault, unnecessary use of excessive force, unnecessary use of deadly force, false imprisonment, false arrest, abuse of process, unlawful search and seizure, defamation, negligent infliction of emotional distress, infliction of serious physical and serious emotional harm, negligence, and violation of my civil rights, all caused by the ***negligent, reckless, and careless actions of the City of Niagara Falls, New York***, the City of New York Police Department, Police Officer Kenneth E. Redmond and Police Officers John Doe 1-10."

(Docket No. 38-2 at page 2)(emphasis added).

Coleman further stated in the Notice of Claim:

> I was illegally and unlawfully assaulted, abused, harassed, pepper sprayed and/or sprayed with a chemical substance, denied prompt medical attention, arrested, imprisoned, seized, struck by an object over the head, searched and otherwise harmed without just cause. I suffered inhuman treatment and was deprived of my Constitutional and civil rights, without basis and/or reason. ***The City of Niagara Falls, New York, The City of Niagara Falls Police Department, Police Officer Redmond and Police Officers John Doe 1-10 conspired and agreed to violate my rights, and they were also negligent in failing to heed the instructions and notice provided to them.***

(Docket No. 38-2 at pages 2-3)(emphasis added). Coleman goes on to state the specific date, time and location of the altercation with Redmond; and she provides detailed description of her alleged injuries as a result of the incident. (Docket No. 38-2 at page 3).

Timely and proper service of a notice of claim which, inter alia, sufficiently identifies the claimant, states the nature of the claim and describes "the time when, the place where and the manner in which the claim arose," is a condition precedent to the commencement of a common-law tort action against a municipality ( see General Municipal Law § 50-e[1][a]. The purpose of the statute is to enable authorities to investigate, collect evidence and evaluate the merit of a claim. <u>Brown v. City of New York</u>, 95 N.Y.2d 389, 392-393 (2000). In <u>Brown</u>, the Court of Appeal stated:

> the statute does not require "those things to be stated with literal nicety or exactness" ... . The test of the sufficiency of a Notice of Claim is merely "whether it includes information sufficient to enable the city to investigate" ... . "Nothing more may be required" ... Thus, in determining compliance with the requirements of General Municipal Law § 50-e, courts should focus on the purpose served by a Notice of Claim: whether based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the accident.

Brown, 95 N.Y.2d. at 393. The information provided in Coleman's Notice of Claim is sufficient to enable Niagara Falls to have investigated the facts involved in the February 24, 2008 incident, her arrest and the altercation with Redmond. She expressly alleges that the City of Niagara Falls was "negligent." This is sufficient, under the circumstances, to have alerted Niagara Falls that the plaintiff was asserting culpability based upon negligence to Niagara Falls for the conduct of Redmond. Other than negligence in the hiring and training of Redmond, the underlying facts do not suggest any other possible negligence claim to be asserted against Niagara Falls. While the language included in the notice may not set forth a claim of negligent hiring and training "with literal nicety or exactness," based upon the language in the Notice of Claim, Niagara Falls cannot claim to be surprised that the plaintiff would include a negligent hiring and training claim. Moreover, when assessing the sufficiency of a notice of claim, the Court may look to evidence adduced at the §50-h hearing. Goodwin v. New York City Housing Authority, 834 N.Y.S.2d. 181 (1st Dept. 2007). Here, although afforded an opportunity to take a deposition prior to the commencement of this action, Niagara Falls refused to do so. To the extent that the defendant seeks dismissal of the negligent hiring and training claim, the motion should be denied.[8]

---

[8] In the event the Court were to determine that the Notice of Claim was insufficient, the plaintiff also seeks to have this Court grant it leave to amend the notice. General Municipal Law §50-e(6) provides that any "mistake, omission, irregularity or defect" in the notice of claim may be "corrected, supplied or disregarded" in the court's discretion, provided that the other party will not be prejudiced by the correction. Section 50-e(7) provides that "[a]ll applications under this

12

The defendants also contend that the plaintiff's claim for the intentional infliction of emotional distress is futile because it cannot be maintained against a government entity. (Docket No. 43 at page 6). The plaintiff acknowledges such, but points out that such claims may be asserted against the individual defendants. (Docket No. 44 at page 7). Thus, to the extent that the plaintiff will be afforded an opportunity to file an Amended Complaint in this action, she may assert this claim against the individual defendants.

Finally, the defendant asserts that the doctrine of qualified immunity precludes the claims asserted against the Niagara Falls police officers. (Docket No. 21 at page 9). When considering the assertion of qualified immunity, the Court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court must analyze claims of excessive force arising in the context of an arrest under the Fourth Amendment's objective

---

section shall be made to the supreme court or to the county court: (a) in a county where the action may properly be brought for trial, (b) if an action to enforce the claim has been commenced, in the county where the action is pending, or (c) in the event that there is no motion term available in any of the counties specified in clause (a) or (b) hereof, in any adjoining county." The defendants assert that the federal courts lack jurisdiction to grant relief to amend or extend the time to file a notice of claim under §50-e. The Second Circuit has not ruled on the issue. See Corcoran v. New York Power Authority, 202 F.3d 530, 540 (2d Cir.1999)(the court noted that the "appropriate state court may extend the time to file a notice of claim" under Section 50-e, but declined to decide "whether the federal court [had] such jurisdiction."). Notwithstanding, most district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application. Humphrey v. County of Nassau, 2009 WL 875534 (E.D.N.Y. 2009); Henneberger v. County of Nassau, 465 F.Supp.2d 176 (E.D.N.Y. 2006); Brown v. Metropolitan Transp. Authority, 717 F.Supp. 257, 258-61 (S.D.N.Y.1989); Horvath v. Daniel, 423 F.Supp.2d 421 (S.D.N.Y. 2006); Gibson v. Comm'r of Mental Health, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006); Bunim v. City of New York, 2006 WL 2056386, at*1 n. 2 (S.D.N.Y. July 21, 2006); Oshinsky v. New York City Housing Auth., 2000 WL 218395, at *14 n. 5 (S.D.N.Y. Feb.23, 2000); Jewell v. City of New York, 1995 WL 86432, at *1-*2 (S.D.N.Y. Mar.1, 1995). Inasmuch as the notice of claim in this instance is not deficient, the Court need not address the plaintiff's request to amend the notice.

reasonableness test, paying "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U .S. 386, 394, 396 (1989). There are factual disputes as to the facts surrounding the plaintiff's arrest, and whether the level of force used by Redmond was necessary and reasonable under the circumstances. These factual issues preclude the dismissal of the plaintiff's claims at this time. McLaurin v. Falcone, 2007 WL 247728 (2d. Cir. 2007)(Because there are disputes of fact here as to whether McLaurin resisted arrest and whether the level of force used by the officers was necessary and reasonable, the District Court's grant of qualified immunity was premature); Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir.2001) (reversing grant of judgment as a matter of law on excessive force claim because "the contrasting accounts ... present factual issues as to the degree of force actually employed and its reasonableness"); Robison v. Via, 821 F.2d 913, 924 (2d Cir.1987) ("[T]he parties have provided conflicting accounts as to whether [plaintiff or the police] initiated the use of force [and] how much force was used by each.... Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury...."). To the extent the defendants assert that the claims must be dismissed based upon the defense of qualified immunity, the motion should be denied without prejudice at this time.

**Conclusion**

The plaintiff's motion to amend the complaint is granted consistent with the above. The plaintiff shall file an Amended Complaint, consistent with the above, within 15 days of the date

of this Order. The defendants shall respond to the Amended Complaint within 15 days of the date of service. The parties shall appear for a Scheduling Conference on September 21, 2010 at 2:00 p.m. before the undersigned.

To the extent the issues raised in the defendants' motion to dismiss are relevant to the claims asserted in the Proposed Amended Complaint, it is recommended that the motion be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not,

presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
July 20, 2010