UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Jaquinda Coleman,

                          Plaintiff,

                                                        **Hon. Hugh B. Scott**

                          v.                                         09CV157S

                                                        **Order**

City of Niagara Falls, et al.,

                          Defendant.

_____

       The plaintiff, Jaquinda Coleman ("Coleman") commenced this action pursuant to 42 U.S.C. §1983 alleging that her rights were violated in connection with her arrest on February 24, 2008. Named as defendants are: The City of Niagara Falls ("Niagara Falls"), Kenneth E. Redmond ("Redmond") and ten "John Does" whose identities are unknown. (Docket No. 66). The plaintiff's arrest arose in connection with a domestic disturbance complaint by Coleman's sister. Coleman asserts that she asked the responding police officers "why her sister's boyfriend wasn't being arrested" and told Redmond that the boyfriend "would have been arrested if the victim was a white woman." (Docket No. 66 at ¶ 21). Coleman alleges that Redmond "told her that if she thought like that she wouldn't get far in the system." (Docket No. 66 at ¶ 22). The plaintiff asserts that she advised Redmond that "she was not interested in getting anywhere in a White supremacist system." (Docket No. 66 at ¶23). According to Coleman, Redmond then "told [her] to go away or he would pepper spray her." (Docket No. 66 at ¶ 24). The plaintiff states that after a further verbal exchange with her, Redmond "walked away to another area of the aforesaid parking lot." (Docket No. 66 at ¶ 25). Coleman contends that after she then turned her back on

Redmond, without further warning, Redmond "ran up to [Coleman] and discharged pepper spray into her face (Docket No. 66 at ¶ 27), and then he struck Coleman "on the forehead with a flashlight and otherwise struck her on her head and body." (Docket No. 66 at ¶30). Other than the general assertion that Redmond's conduct was taken with "the participation and/or acquiescence" of the other officers present at the scene, the Amended Complaint does not attribute any specific conduct to any other defendants.

It appears that the plaintiff's discovery demands seek, among other things, documents from the personnel file of defendant Redmond, and other officers, as maintained by the City of Niagara Falls Police Department. Pursuant to the Stipulation and Protective Order (Docket No. 69), the defendants have presented these documents to the Court for *in camera* review. The documents submitted for *in camera* review include documents related to one prior claim of alleged excessive force asserted against Redmond (Bates No. 001-011). The remainder of the documents submitted for review appear to be the background investigation and other documents relating to Redmond's hiring by the Niagara Falls Police Department (Bates Nos. 311-377).

Pursuant to the September 12, 2011 letter accompanying the submitted documents (which was copied to plaintiff's counsel), the defendants have produced the documents relating to Redmond's background and hiring (Bates Nos. 311-377) to the plaintiff in redacted form. The letter identifies the nature of the material redacted from these documents. The defendants object to producing personnel documents relating to any other officers present at the scene of the incident inasmuch as they were not involved in the alleged conduct underlying the plaintiff's claim.

The sole issue before the Court at this time is whether the defendants' must produce the documents relating to the prior claim of excessive force and the redacted portions of the

documents relating to Redmond's background investigation and hiring.  In federal civil rights cases, issues of privilege are governed by federal, not state, law.  It is undisputed that under federal law, New York Civil Rights Law § 50-a does not prohibit discovery of police personnel documents.  Martin v. Lamb, 122 F.R.D. 143, 146 (W.D.N.Y. 1988 ).  That does not mean that the state statute is to be given no effect. According to the New York State Court of Appeals, the legislative intent underlying the enactment of §50-a was enacted to prevent time consuming and perhaps vexatious investigation into irrelevant collateral matters in the contest of a civil or criminal action, and to avoid embarrassment and harassment of testifying officers by cross-examination concerning "unsubstantiated and irrelevant" matters in their personnel files.  See Matter of Capital Newspapers v. Burns, 67 N.Y.2d 562 (1986). Generally, the Court will direct the production of documents contained in the personnel file of an officer only if the documents are relevant and involved disciplinary action taken against the officer.  See Diaz v. Goord, 2007 WL 2815735 (W.D.N.Y. 2007)(Payson, M.J.)(directing disclosure of documents relating to disciplinary action imposed on the defendants in connection with allegation of excessive force); Wright v. Goord, 2008 WL 2788287 (W.D.N.Y. 2008)(Payson, M.J.)(directing search of personnel files for documents relating to disciplinary action taken against defendants based upon the use of excessive force). It is unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence. See Crenshaw v. Herbert, 409 Fed.Appx. 428 (2d. Cir. 2011)(the district court did not abuse its discretion by denying plaintiff's motion to compel production of defendant's personnel file; the court properly relied on defense counsel's affirmation that the file contained no relevant disciplinary records; even if evidence of a prior *substantiated* excessive force investigation existed, on the facts of the particular case before us such evidence would be inadmissible to show that defendant acted violently in this instance).

Crenshaw, 409 Fed.Appx. at 430 citing Fed.R.Evid. 404(b). See also DiRico v. City of Quincy, 404 F.3d 464 (1st Cir. 2005)(district court in arrestee's § 1983 action against police officer for injuries sustained in arrest did not plainly err in excluding evidence of an earlier arrest by officer that resulted in a complaint of use of excessive force; evidence had no special relevance to any issue in action, evidence relating to a single, unsubstantiated claim of use of excessive force had limited probative value, and admission would have created danger that jury would render verdict on improper basis that officer was prone to engaging in violent behavior.)

In the instant case, the defendants assert that the documents relating to the prior claim of alleged excessive force involving Redmond is "not responsive" to the plaintiff's discovery request. (September 12, 2011 Letter, at page 2). A review of the documents relating to that incident reflects that an officer other than Redmond was the primary officer involved in the incident; that Redmond provided assistance to that officer in subduing an individual; that an investigation determined that all of the officers involved acted appropriately; and that no disciplinary action was warranted.  The defendants need not produce the documents relating to the prior unsubstantiated allegation of excessive force involving Redmond.

Similarly, it does not appear that the disclosure of the information redacted from Redmond's background investigation and hiring documents (dealing with Redmond's legal issues as a student) would likely lead to admissible evidence in this case.

So Ordered.

                                                            */s/ Hugh B. Scott*
                                               United States Magistrate Judge
                                             Western District of New York

Buffalo, New York
October 12, 2011