UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAQUINDA COLEMAN,

    Plaintiff,

  v.

THE CITY OF NIAGARA FALLS, KENNETH REDMOND, JOHN DOE Nos. 1-10, whose identities are unknown, except to the extent that they are employees of the CITY OF NIAGARA FALLS and/or members or personnel of the Police Department of the CITY OF NIAGARA FALLS,

    Defendants.

**DECISION AND ORDER**

09-CV-157S

## I. INTRODUCTION

In this action, the attorney who first represented the plaintiff in this case asks this Court to exercise ancillary jurisdiction over the fee dispute between his current firm and the firm that subsequently represented Plaintiff up to the successful settlement of her case. The parties agree that attorneys' fees should be based on a percentage of the work performed on the file, but dispute the proper percentage for Plaintiff's initial attorney, F. David Rusin, and his current firm, the Mattar firm.

## II. BACKGROUND

The following facts are undisputed. In February 2008, Plaintiff Jaquinda Coleman was struck on the head in an encounter with Niagara Falls police officer Kenneth Redmond. (Amended Complaint, Docket No. 46 at p. 5.) She initially retained F. David Rusin, then associated with J. Michael Hayes, to represent her in a civil rights and

1

personal injury case. (Docket No. 180-1 at p. 2.)

In representing Plaintiff, Mr. Rusin met with Plaintiff and her family; filed a notice of claim and attempted to coordinate her appearance at a General Municipal Law 50-h examination; helped secure representation by Joel Daniels, Esq., in a related criminal matter; prepared and filed a summons and complaint; brought a "motion for default judgment;" prepared an opposition to Defendants' motion to vacate the entry of default; and filed a motion to withdraw as counsel on February 1, 2010. (Docket No 23; Docket No. 180-1 at p. 2-3.) Mr. Rusin spent approximately 20 attorney hours on the case, and legal assistants expended nearly 12 hours. (Docket No. 180-1 at p. 8.)

When Mr. Rusin joined the Mattar firm, in December 2008, Plaintiff executed a new retainer agreement with the Mattar firm. (Docket No. 180-1 at p. 2.) At that time, J. Michael Hayes delegated the Mattar firm to receive attorneys' fees from Mr. Rusin's work. (Docket NO. 180-1 at p. 2.)

In early 2010, Plaintiff sought the representation of HoganWillig in her case. No party asserts that this was for cause. HoganWillig took over her representation in February 2010, and continued until a successful settlement in November 2015. When HoganWillig took on the case, it reimbursed the Mattar firm $536.00 for disbursements, but did not provide attorneys' fees. (Docket No. 180-1 at p. 3.)

At HoganWillig, plaintiff was represented by Steven Cohen, head of litigation, assisted by three other experienced attorneys. (Docket No. 183-1 at p. 3.) In representing Plaintiff, HoganWillig: filed two amended complaints; prepared and filed other pleadings and motions; responded to Defendants' motions, including a motion for summary judgment; prepared stipulations, memoranda, and trial briefs; engaged in pre-trial

2

discovery; and participated in settlement arbitration. (Docket No. 183-1 at p. 4.)

HoganWillig ultimately reached a settlement of $350,000. (Docket No. 183-1 at p. 7.) HoganWillig spent 494.3 documented hours on Plaintiff's case. (Docket No. 183 at p. 7.)

After the resolution of the case, the Mattar firm filed a motion for attorneys' fees, seeking 40% of total attorneys' fees in the case. (Docket No. 180.) The two law firms attempted to reach an agreement on the distribution of attorneys' fees, even participating—unsuccessfully—in mediation on the subject. (See Docket No. 186.) Before this Court is the Mattar firm's motion, and HoganWillig's response.

### III.  DISCUSSION

Mr. Rusin argues that he and his current law firm merit 40% of the total attorneys' fees in this matter. Rusin argues that he spent around two years representing Plaintiff, and filed a complaint and other motions on her behalf.

HoganWillig argues that 40% is an excessive proportion of the fees, given that HoganWillig performed the bulk of the legal work in the case, and that its expert representation led to the successful settlement for Plaintiff.

**A.    Ancillary Jurisdiction**

"[I[n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…" 28 U.S.C. § 1367(a).

3

The Second Circuit has stated that "[w]henever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." Borg v. 86th & 3rd Owner, LLC, No. 08 CIV. 05913 RJH, 2012 WL 234383, at *6 (S.D.N.Y. Jan. 24, 2012) (quoting In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir.2003)). "[A]ncillary jurisdiction is intended 'to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and ... to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir.2006) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379–80, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)). "A court may also rely on ancillary jurisdiction to resolve a dispute among attorneys regarding the proper apportionment of fees earned during a case within the court's jurisdiction, even if the dispute does not directly involve a party to the dismissed action." Borg, 2012 WL 234383, at *6, citing Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 90 (2d Cir.2010).

Because the present dispute over attorneys' fees is collateral to the original case, this Court will exercise ancillary jurisdiction over the fee dispute between the law firms which represented the plaintiff in the underlying action.

**B.  Distribution of Attorneys' fees**

**1. Legal Standards**

New York Judiciary Law § 475 provides that "an attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in

4

his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

In accordance with New York law, where a client discharges a lawyer "without cause and prior to the conclusion of the case, ... [the attorney] may recover either (1) in quantum meruit, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed." Crout v. Haverfield Int'l, Inc., 348 F. Supp. 3d 219, 229 (W.D.N.Y. 2018) (citing Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004)).

Similarly, in a dispute between attorneys over fees, "[t]he outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case." Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 458, 539 N.E.2d 570 (1989). "The percentage may be fixed at the time of substitution but, … is better determined at the conclusion of the case when such factors as the amount of time spent by each lawyer on the case, the work performed and the amount of recovery can be ascertained." Id.

The factors for a court to consider in determining the division of attorneys' fees are: (1) "the time and labor spent by each" attorney or firm, as well as "the actual work performed" by each; (2) "the difficulty of the questions involved" and "the skill required to

handle the matter"; (3) each "attorney's skills and experience"; and (4) "the effectiveness of counsel in bringing the matter to resolution." Borg v. 86th & 3rd Owner, LLC, No. 08 CIV. 05913 RJH, 2012 WL 234383, at *7 (S.D.N.Y. Jan. 24, 2012) (citing Buchta v. Union–Endicott Cent. Sch. Dist., 296 A.D.2d 688, 689–90, 745 N.Y.S.2d 143 (N.Y.3d Dep't 2002)).

### 2. 10% is an appropriate proportion of fees for the Mattar firm

Here, the parties agree that attorneys' fees should be based upon a percentage of the work performed on the file. (Docket No. 180-12 at p. 4, citing Lai Lang Cheng, 73 NY 2d at 458). Mr. Rusin requests 40% of the fees. HoganWillig asks this Court to reduce Mr. Rusin's recovery for non-legal ministerial tasks that did not further the client's cause, and suggests a 5% maximum recovery.

As summarized in Mr. Rusin's affirmation, he spent at least 20 attorney hours on the case, and legal assistants expended nearly 12 hours. (Docket No. 180-1 at p. 8.) The work Mr. Rusin performed consisted of: meeting with Plaintiff and her family; filing a notice of claim and attempting to coordinate her appearance at a General Municipal Law 50-h examination; helping secure Plaintiff's representation by Joel Daniels, Esq., in a related criminal matter; preparing and filing a summons and complaint; bringing a "motion for default judgment;" preparing an opposition to Defendants' motion to vacate the entry of default; and filing a motion to withdraw as counsel on February 1, 2010. (Docket No 23; Docket No. 180-1 at p. 2-3.) Mr. Rusin represented Plaintiff for approximately two years.

HoganWillig asserts that it spent a total of 494.3 documented hours. (Docket No. 183 at p. 7.) HoganWillig claims that, because it was not billing Plaintiff by the hour, it did not scrupulously record hours, and that the actual hours spent are much higher. (Docket

No. 183-1 at p. 4.) This included filing two amended complaints, numerous other pleadings, motions, responses to motions, stipulations, and memoranda, and engaging in trial preparation, pre-trial discovery, and settlement arbitration. (Docket No. 183-1 at p. 4.) HoganWillig took over Plaintiff's representation in February 2010, and represented her to the brink of trial, ultimately reaching a settlement of $350,000 in November 2015. (Docket No. 183-1 at p. 7)

HoganWillig points to the extensive qualifications of lead attorney Steven Cohen, including expertise in civil rights cases like Plaintiff's. (Id. at p. 5-6.) Overall, HoganWillig points to the disparity in time, level of work performed, and qualifications of counsel as factors for this Court to consider.

This Court finds that Mr. Rusin spent 6% of the total hours, while HoganWillig spent 94% of the total hours. As to the difficulty of the questions and the skill required, this Court notes that Mr. Rusin filed a summons and complaint, while HoganWillig filed several amended complaints and defended against a motion for summary judgment. This factor favors HoganWillig, although this Court recognizes the work required in the initial development of a case. As to each attorney's skill and experience, Mr. Rusin does not state the level of his expertise or litigation experience. HoganWillig asserts that Mr. Cohen, who led the case, is a highly experienced litigator, and that he had 3 experienced attorneys assisting him. (Docket No. 183-1 at p. 5-7.) This factor favors HoganWillig. In terms of effectiveness of counsel in bringing the matter to resolution, this factor also appears to favor HoganWillig.

Taking these factors into consideration, this Court finds that Mr. Rusin is entitled to 10% of the attorneys' fees, commensurate with the proportion of time he spent and

7

with his efforts in initiating and maintaining Plaintiff's case. The total settlement of $350,000 resulted in attorneys' fees of $110,050.63. This Court therefore grants the Mattar firm $11,005.00 in attorneys' fees for the work performed by Mr. Rusin in this case.

## CONCLUSION

For the reasons stated above, the motion for this Court to exercise ancillary jurisdiction and to award attorneys' fees is granted.

## IV. ORDERS

IT HEREBY IS ORDERED, that the Motion for this Court to Exercise Ancillary Jurisdiction and Grant Reasonable Attorneys' fees (Docket No. 180) is GRANTED.

IT FURTHER IS ORDERED, that the Mattar firm is granted 10% of the attorneys' fees in this case, or $11,005.00.

IT FURTHER IS ORDERED, that HoganWillig shall disburse said amount to the Mattar firm from the attorneys' fees it received in this case.

SO ORDERED.

Dated:    March 1, 2020
             Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                             United States District Judge